THE STATE OF NEW JERSEY IN THE
INTEREST OF THOMAS STASILOWICZ.

Superior Court of New Jersey
Appellate Division

Argued June 24, 1968—Decided July 3, 1968.

See also 48 *N. J.* 224.

Before Judges SULLIVAN, FOLEY and LEONARD.

*Mr. Eugene P. Kenny,* assigned counsel, argued the cause for appellant.

*Mr. William J. Cunnane,* Assistant Prosecutor, argued the cause for plaintiff-respondent (*Mr. James A. Tumulty, Jr.,* Hudson County Prosecutor, attorney).

The opinion of the court was delivered by
LEONARD, J. A. D. The Juvenile and Domestic Relations Court determined Thomas Stasilowicz to be a juvenile delinquent. The basis for the court's ruling was its finding beyond a reasonable doubt that Stasilowicz had killed Deborah Coleman, a 10-year-old girl, in such a manner that if Stasilowicz were over 18 he would have been guilty of second degree murder. From that determination Stasilowicz appeals, contending: (1) that the lower court erred in denying his motion for dismissal made at the close of the State's case; (2) that the lower court's judgment was against the weight of the evidence; and (3) that the ad-

mission of the testimony of Albertus Crolius concerning a declaration of guilt that Stasilowicz had made to his parents constituted a deprivation of Stasilowicz's right to due process of law.

The body of decedent was found under a door in a darkened unused portion of the cellar in the Jersey City tenement house in which Stasilowicz and his family lived. The girl had been strangled by a venetian blind cord, and other pieces of cord were found near the body. There was evidence of trauma to decedent's external genitalia. Her clothes were blood-stained, and dirt and debris were embedded in her clothing and body. She was found lying on a dress that had previously belonged to Thomas Stasilowicz's mother.

Roughly 15 to 20 feet from where the body was found was a padlocked woodshed used by the Stasilowicz family and by Thomas Stasilowicz in particular. After finding the body, police forced open the shed and there found rugs bearing dirt, debris, and blood stains similar to those found on decedent. The shed also contained various articles of blood-stained clothing. The garments had been discarded by the Stasilowicz family and stored in the shed by Thomas. Mrs. Stasilowicz testified that she could not remember the clothing being stained when it was discarded.

On the door of the woodshed was a piece of cord similar to that used to strangle Deborah Coleman. Thomas Stasilowicz's bicycle was also found within the shed, and a long piece of the same type of venetian blind cord was removed therefrom. When Thomas was apprehended by the police, his shirt tail bore dirt stains similar to those found on decedent.

The State produced four witnesses who testified as to admissions of guilt that Stasilowicz allegedly had made in their presence. The State's witnesses included two youths who had been incarcerated in the Hudson County Youth House with Stasilowicz and two men who had been Youth House attendants during that period. The Juvenile and

Domestic Relations Court judge stated that he believed the testimony of all four witnesses. The lower court judge also believed the testimony of a neighbor of the decedent and Thomas who had seen the boy pulling the girl by the hand on the evening that Deborah Coleman had disappeared and who had heard the girl threaten to tell her mother if Thomas did not leave her alone.

The testimony of one of the Youth House attendants, Albertus Crolius, is significant. Crolius stated that he had been assigned by the Youth House Superintendent to conduct Stasilowicz's mother and step-father to Stasilowicz's detention room during the parents' first visit to the Youth House. The attendant asserted that he had remained in the doorway of the detention room during the visit pursuant to instructions he had received from the Superintendent. There Crolius heard Thomas declare, when queried by his step-father, that he had strangled Deborah Coleman.

During the course of defendant's case, Thomas and his parents acknowledged that the boy had admitted his guilt to his step-father during the parents' first visit to the Youth House. There was no effort made to deny that Crolius was present in the doorway at the time. In fact, Thomas conceded that he saw Crolius there while making his admission.

Thomas and his mother, though, both testified that after Thomas's step-father had left the detention room, Thomas had told his mother that he had not killed Deborah. The admission to Thomas's step-father was rationalized as being caused by difficulties existing between Thomas and Mr. Stasilowicz. The trial judge found this explanation to be "untrue and not worthy of credence." Stasilowicz offered additional testimony designed both to rebut the other admission evidence introduced against him and to exculpate himself. This was discounted by the trial judge who "found the defendant * * * to be evasive on the stand, cool and composed throughout the trial, ready to match wits with the prosecution and lapsing into forgetfulness frequently and conveniently."

## I

██ Stasilowicz moved for dismissal at the close of the State's case. The lower court, however, did not rule on the motion until after all the evidence had been introduced. Nonetheless, in determining the propriety of the lower court's ruling, we may consider only evidence adduced during the course of the State's case. See *State v. Fiorello,* 36 *N. J.* 80, 86–87 (1961), cert. denied 368 *U. S.* 967, 82 *S. Ct.* 439, 7 *L. Ed.* 2d 396 (1962). Viewing that evidence in its entirety and giving the State the benefit of all its favorable testimony and all the favorable inferences that could reasonably be drawn therefrom, a trier of fact could reasonably have found beyond a reasonable doubt that Stasilowicz had committed an act which if he were of age would have been second degree murder. Therefore, the lower court was correct in denying the motion for dismissal. *State v. Reyes,* 50 *N. J.* 454, 458–459 (1967).

██ The circumstantial evidence itself was sufficient to generate a belief of guilt beyond a reasonable doubt. Therefore, it alone justified the lower court's ruling. See *State v. Mills,* 51 *N. J.* 277, 287 (1968). However, we are not remitted to having to consider whether the circumstantial chain presented by the State made out a *prima facie* case against Stasilowicz. The testimony concerning Stasilowicz's own inculpatory declarations bolstered the inferences of guilt which could be drawn from the circumstantial proof. When we consider the admissions together with the circumstantial evidence, we have no doubt as to the propriety of the denial of Stasilowicz's motion.

## II

In considering whether the judgment was against the weight of the evidence, we are not limited to a consideration of the State's case alone. Our task here is to examine the entire record. So doing, we believe that the defendant's

case strengthened the proof against Stasilowicz. Crolius's testimony was fully corroborated by Thomas and his parents.

Moreover, in reviewing Stasilowicz's allegation that the factual findings of the lower court were not supported by the evidence, we are obligated to give due regard to the opportunity of the lower court to assess the credibility of the witnesses. *R. R.* 1:5–4(*b*); *R. R.* 2:5. We conclude that there is nothing in the record that would justify our disturbing the lower court's decision to believe the State's witnesses and to disbelieve Stasilowicz.

Accordingly, we find no reason for overturning the factual determination of the trial court.

## III

Stasilowicz's constitutional argument is without merit. There was nothing to compel the boy to admit his guilt in the presence of Crolius. Moreover, the attendant did not use surreptitious means to overhear Stasilowicz's admission, for it is uncontroverted that Crolius was in open view of Thomas when the latter told his step-father of his participation in the crime. The constitution does not protect any mistaken notion Stasilowicz might have had that his voluntary admission of wrongdoing in the presence of Crolius could not be turned by the guard into evidence against the boy at trial. See *Hoffa v. United States,* 385 *U. S.* 293, 302, 87 *S. Ct.* 408, 413, 17 *L. Ed.* 2d 374, 382 (1966).

Affirmed.